Minshall, C. J.
Mutuality is the essential principle of a building association. Its business is confined, to its own members; its object being* to raise a fund to be loaned among themselves, or such as may desire to avail themselves of the privilege. This is done by the payment, at stated times, of small sums, in the way of dues, interest on loans and premiums for loans. Each - shareholder, whether a borrower or nonborrower, participates alike in the earnings of the association, and alike assists in bearing the burthen of losses sustained. It has what is called a capital stock. But this is only true in a modified sense. Unlike other corporations for profit, a share in a building association has, at the inception, only a nominal value. Its value is expected to increase by the lapse of time and the success of the association. It is contrary to the purpose and genius of a building association that a share in it should be paid up at the time of the subscription. The is done by the payment of small dues, and the crediting, at stated times, of the earnings in the way of dividends. When the aggregate dues with the credited earnings equal in amount the par value of a share of stock, it is paid up, and the owner, for that share, ceases to be a stockholder. He is enti *185 tied to the par value of his stock, but can no longer participate in the earning’s of the association. His relation, then, becomes simply that of a creditor, until he is paid. Of course what is here said, is subject to the qrtalification, that no losses have been sustained. Losses are incident to the most careful management of men; they cannot be wholly avoided; though it is worthy of note, that the smallness of the losses in the .management of building associations, compared with that of other. monied institutions, is remarkable. Still, agents may prove unfaithful, and bad loans be made. When this happens, the mutual character of the association prescribes that the burthen must be sustained by the stockholders according to the amount of their stock; for he who participates in the benefit of a business must assist in bearing the burthen.
As before observed, borrowers and nonborrowers participate alike in the earnings of a building-association. The difference between them is simply in the time at which each class is paid the par value of his shares. A borrower before his .stock is paid up, receives from the association the par value of his shares, in the nature of an advance loan. For this, he agrees to pay the premium, if any, for the privilege, the interest on the money advanced, subject to abatements to be made at stated times, and the dues on his stock until it matures. In other words, he agrees to keep up and pay out his stock, as if he were a nonborrower, in consideration of the amount being advanced to him before that time. Hence, the borrower remains a stockholder, and participates in all the privileges and benefits of a stockholder; has a voice in the management of the association and participates in *186 its earnings. The latter go toward discharging his obligations arising on the loan, and to shorten the time in which he will be fully discharged therefrom. For, taking all losses into account, whenever the shares of the borrower have reached their par value by the payment of dues and the apportionment of earnings, the loan is liquidated and he ceases to be a member, as he would, if he had not borrowed at all. In other words, with his shares paid up, he discharges his obligations as a borrower. And the exact test of his right to call for a cancellation of the mortgage given to secure his obligations as a borrower, is the inquiry, whether he would have been entitled to receive from the association the par value of the shares on which the loan was made, had he not become a borrower.
In this case, Mrs. Schmitt subscribed for twelve shares, and received from the association their par value, $3,000, as an advanced loan, at a premium of $240. She paid the premium, and agreed to pay the dues thereon, $6.00 per week, and interest at the rate of six per cent., subject to an annual abatement, “until such time as the weekly' dues paid and dividends declared and unpaid shall amount to the sum of three thousand dollars,” and all “assessments” that might be levied upon her as a member of the association. She paid the premium, the dues $3,000, and the interest on the loan to the appointment of the receiver. These facts standing alone would satisfy the mortgage. But it is further found that the association is insolvent; that its capital is impaired to the extent of about thirty-one per cent., for which the receiver has made an assessment on the members including the defendant; ' that the losses occurred during *187 her membership, were caused by the payment of dividends that had not been earned, and the misapplication of moneys by the treasurer; and that she had withdrawn $995.92 of these unearned dividends, although the right to draw earned dividends was limited by the constitution to those members who had not “drawn money.” Can then a borrower under these circumstances claim the cancellation of his mortgage? We think not. To do so would, as we have shown, undermine the principles upon which these associations are organized. By the terms of the constitution of the association, on the cancellation of the mortgage, the borrower ceases to be a member, and all liability to it is at an end. We see no reason why the remaining- members should be left to bear all the burthen, resulting from losses, for which they are no more to blame than she is. It is wholly unlike a savings society where the borrower is not a member or otherwise interested in its business. Having1 no voice in the management, nor interest in the earnings of the society, the borrower and it sustains the simple relation of debtor and creditor. Here, as shown, the borrower is also interested as a creditor. The loan is for no definite period of time. It depends upon the management of the association, in which he continues as a member and has- a voice. It is in view of the relation of the borrower to the association and the possibility of losses, that the mortgage stipulates that, in addition to the specific conditions mentioned, the borrower shall pay all ‘ ‘ assessments ’ ’ that may be levied on him. The fourth section of the twelfth article of the constitution, on which much stress is laid, simply expresses what would "be true in a safely conducted association. It does not include nor *188 apply to the case where there are no earnings, and losses have to be met and borne. This was wisely provided for in the mortgage. It was a matter about which the parties could and have contracted. There is no suggestion of fraud or mistake in its execution, and their rights must be determined by its stipulations, conforming’ as they do to the equity and justice of the case. She has received from the association in the way of unearned dividends, a sum greater than the assessment that has been made on her.
But it is insisted that Mrs. Schmitt, and the other members were not parties to the suit in which the receiver was appointed, and that he had no power to make the assessment, and it is not binding upon them. This objection is without weight. It is not necessary that the members should, as individuals have been made parties to that suit. They are parties in. their corporate name and capacity, and, for the appointment of a receiver, that was sufficient. We will presume that the receiver was duly appointed, as-there is nothing to the contrary. As receiver, it was his duty to collect the assets and wind up the affairs of the association. This could only be done by ascertaining the loss and making- an assessment on the members to meet it. It was simply a matter of calculation; involved no matters of personal confidence, and could, therefore, be made by the receiver as well as by the members themselves or their chosen agents. Moreover these had been displaced by the appointment of the receiver, and could not a'ct in the premises.
It is, however, found that a large number of members, borrowing and nonborrowing, who were such during the time the losses occurred, had with *189 drawn prior to the time the association went into the hands of a receiver. This does not affect the question here. In the absence of bad faith, such persons as had, according to the constitution and by-laws of the association, withdrawn and ceased to be members, cannot again be brought into the association for the settlement of losses. Wangerien v. Aspell, 47 Ohio St., 250, 261. The withdrawal being an executed transaction, can only be recalled by the association, and a remedy had, in conformity to the rules of equity jurisdiction.
It follows, as we think, that the judgment of the circuit court, dismissing the petition of the receiver should be reversed, and judgment entered upon the findings as prayed for in the petition.

Judgment accordingly.